[Civil No. 4395.   Filed October 20, 1941.]

[118 Pac. (2d) 74.]

R. O. COLLIER, Appellant, v. GENERAL EX-
CHANGE INSURANCE CORPORATION, a
Corporation, Appellee.

Messrs. Beumler and Beumler, for Appellant.

Mr. Henry S. Stevens, for Appellee.

LOCKWOOD, C. J.—This is an appeal from a judg-
ment of the superior court of Cochise County.  The
case was submitted to the court on an agreed state-
ment of facts, which we summarize as follows:

In 1937 one William B. Urquhart purchased from the Southern Arizona Auto Company, called the dealer, a new automobile on a conditional sales contract, and at the same time secured the usual insurance policy which auto dealers require when a car is sold under such a contract. The policy expressly insured the dealer, its assignee General Motors Acceptance Corporation, called the GMAC, and Urquhart, as their interest appeared. In May, 1938, Urquhart sold the car to R. O. Collier, plaintiff herein. The latter was unable to pay for the car and arranged with friends named Crow to loan him the full amount necessary to pay off the original conditional sales contract and to pay Urquhart for his equity, taking a similar agreement with plaintiff for the full amount which they had thus advanced to clear the car. Possession of the car was delivered to plaintiff on May 30, 1938, at which time Urquhart assigned to him the insurance policy, which still had some time to run. Mrs. Crow, who from that time on acted as agent of plaintiff, wrote to the GMAC on June 23d, notifying it of the situation and that the insurance policy had been assigned by Urquhart. This letter was received by the GMAC on June 24th, and on June 27th it replied as follows:

"We are indeed sorry that we are also unable to make an assignment of Mr. Urquhart's insurance policy to Mr. R. O. Collier as you requested. The policy will, of course, remain in effect for the original length of the contract but is effective only for the original purchaser and while the car is in his possession. If Mr. Urquhart would prefer to forward his policy to us and secure other insurance for your protection we will be glad to cancel the GEIC policy and forward to him the unearned portion of the premium. If he desires to have us handle it in this manner, would you please have forward—his policy and we will take care of it."

On June 28th Mrs. Crow replied in this language:

"I have the GEIC policy number PX–20412 and written on the face of the policy is the following: 'Tucson, Arizona, May 30, 1938. *I Hereby Assign This Insurance Contained in Policy No. PX–20412 on Oldsmobile Sedan Motor Number F772144 to the Purchaser.' Signed, William B. Urquhart.* It would seem that that is enough authority to pay the rebate to Mr. Collier. It is the desire of Mr. Collier and myself and we were informed by the General Motors representative that the insurance could be transferred. If this cannot be done please advise the amount of the rebate as of May 30, 1938, as that was the date Mr. Urquhart relinquished the car to the purchaser."

This letter was referred to defendant herein, which had issued the insurance policy, called the insurer, and it for the first time learned of the assignment referred to in the letter of June 28th. Thereafter the GMAC on July 5th advised Mrs. Crow as follows:

"We do not know what representative informed you that the insurance policy could be transferred to another person, and we are indeed sorry to inform you that this cannot be done. The only possible way it could be transferred would be by a regular transfer of equity, and as this account is paid in full this would not be possible. The writer called the General Exchange Insurance Corporation, and they informed us that with the assignment which Mr. Urquhart wrote on the face of the insurance policy, they would be able to forward the unearned premium direct to you. They will not, however, quote the amount of the premium which would be returned until the policy is in their possession. It would then, of course, be figured on the date on which they received it. If you wish to forward this policy to us, we will in turn forward it to GEIC and ask that they cancel it sending the rebate directly to you. We hope that this will clear the matter up for you."

In the meantime plaintiff had started on a lengthy tour and on July 6th, was involved in an auto collision

which caused the damage for which plaintiff brought this action against the insurer. The latter was notified of the accident by wire, in this language:

"Wire Colission coverage to 1013 Lampton Building, Jackson, Miss. Policy PX–20412 R. O. Collier 1937 Olds.,"

and replied as follows:

"Retel Collier no coverage original · purchaser William Urquhart no transfer of equity letter follows."

Demand was made upon the insurer for payment of damages, which was refused by the latter on the ground there was no liability. The policy on its face insured Urquhart, the dealer and the GMAC, and contained the three following provisions:

" . . . While subject to any Lien, Mortgage or other encumbrance not specifically described herein."

" . . . this entire policy shall be void, unless otherwise provided by agreement in writing added thereto, if the interest of the Assured in the subject of this insurance be or become other than unconditional and sole lawful ownership, . . . or in case of transfer or termination of the interest of the Assured, . . . or if this policy or any part thereof shall be assigned before loss."

" . . . This policy shall be void in event of violation by the Assured of any agreement, condition or warranty contained herein. . . . "

The insurer has never formally endorsed the policy recognizing the plaintiff as the assured. The question is whether, on this state of facts, plaintiff was entitled to recover upon the policy.

It is contended by insurer that this case comes under the rule laid down by this court in *Brogoitti* v. *Walter,* 43 Ariz. 290, 30 Pac. (2d) 835, 836. Therein the owner of certain real estate had borrowed $1,500 thereon and executed a promissory note secured by a mortgage. She took out a policy of fire insurance in favor of her-

self and the mortgagee covering a house upon the premises, which contained the following provision:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto,

" . . . (d) If any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard). . . . "

with another provision that no act of the mortgagor should invalidate the insurance of the interest of the mortgagee in the premises. Some time later the title to the property passed by various mesne conveyances to a third party subject to the mortgage above mentioned. The insurance policy was never assigned to the last purchaser, nor did the insurer ever approve or consent to the policy being transferred to him. Thereafter the dwelling house insured was destroyed by fire. The reasonable value of the property destroyed was agreed to be $1,320, which sum the insurance company paid to the mortgagee, and demanded of her that she deliver to it an assignment of her interest in the mortgage, which was done. The last purchaser then tendered to the mortgagee a sum sufficient to pay the amount still due on the mortgage, if the $1,320 which she had received from the insurance company was applied thereon. The question for our determination was whether the last owner of the property was entitled to have the amount of money received by the mortgagee as proceeds of the policy applied on the mortgage. In other words, under the circumstances set forth, did he succeed to the rights of the original mortgagor in the insurance policy? We said:

" . . . It is the rule, supported by an overwhelming weight of authorities, that a contract of insurance against loss or damage to property, though popularly called an insurance of the property, is in reality a contract to indemnify the owner against loss, and does

not attach to or run with the land, if the insurance is upon real property. Since these policies are personal contracts and not negotiable instruments, they cannot be assigned so as to give any rights thereunder as against the insurer without the consent of the latter. The effect of this is that, in the absence of an agreement or statute to the contrary, so long as the original insured retains an interest in the property, he may recover upon the policy in case of loss, to an amount not exceeding the value of that interest, but that, if he parts with all his interest therein, the policy is at an end, and the transferee of the property, even though the policy be assigned to him, has no rights thereunder, except upon the consent of all of the parties, the assignor, the assignee, and the insurer. . . . ''

and we held the purchaser could not compel a credit of the proceeds of the policy on the mortgage.

█ Plaintiff admits the correctness of the rule of law laid down in the Brogoitti case, *supra,* and that it would apply to the present situation if it were not for one thing. He contends that provisions like these in an insurance policy declaring that under certain circumstances it shall become void really mean, as a matter of law, that it is voidable at the choice of the insurer, and that the latter may waive such condition or be estopped from asserting it under some circumstances, and has done so under the facts of the present case.

We think there can be no question that the general rule claimed by plaintiff is correct. The word ''void'' frequently means in reality ''voidable'' at the option of the injured party. *Kinney* v. *Lundy,* 11 Ariz. 75, 89 Pac. 496; *Yancy* v. *Jeffreys,* 39 Ariz. 563, 8 Pac. (2d) 774. And this, we think, is the law with an insurance policy of the present character. The question then is, did the insurer waive its right to declare the policy void, or, by its conduct, is it estopped from so doing?

■ Upon an examination of the correspondence between the parties it appears that when it was notified of the date when the event occurred which gave it the right to consider the policy as terminated, to wit, May 30th, and was requested to compute and pay to plaintiff a rebate as of that date, it replied in the following language:

" . . . They will not, however, quote the amount of the premium which would be returned until the policy is in their possession. It would then, of course, be figured on the date on which they received it."

We think the only reasonable construction of this language is that not only would the insurer refuse to *pay* the rebate until it received the canceled policy, a condition which was reasonable enough, but that it would *not* compute the rebate from the date on which plaintiff took title to the car, but from the date on which he returned the policy. In other words, its position was that the policy would remain in full force so far as earning a premium was concerned until it was actually delivered for cancellation, but would cease to insure the property as of the date the change in title took place. The injustice and unreasonableness of this position is obvious. If the insurance policy was void as of the date of the transfer of title, it was void for all purposes and the rebate should have been calculated as of that date. If it was in force so far as the earning of a premium was concerned until it was actually returned for cancellation, it must necessarily have been in force so far as insurance was concerned. The insurer cannot eat its cake and save it at the same time, and having elected to continue the policy in force for the purpose of earning a premium, it cannot now be heard to say that it was not in force for the purpose of insurance. The justice of this rule is so obvious

that it needs no citations to support its application to the statement of facts.

The judgment of the lower court is reversed and the case remanded with instructions to enter judgment for plaintiff in accordance with this opinion.

McALISTER and ROSS, JJ., concur.