728 P.2d 1242

**Wanda McCOLLUM, Individually, as the surviving spouse, and as the Personal Representative of the Estate of Norman L. McCollum, Deceased, Plaintiff-Appellee,**

v.

**CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Defendant-Third Party Plaintiff-Appellant.**

**No. 1 CA–CIV 8068.**

Court of Appeals of Arizona,
Division 1, Department B.

July 1, 1986.

Review Denied Dec. 2, 1986

Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for defendant-third party plaintiff-appellant.

Goldstein, Kingsley & Myres, Ltd. by Philip T. Goldstein, Pamela L. Kingsley, Phoenix, for plaintiff-appellee.

OPINION

CORCORAN, Judge.

During October 1980, Dr. Daun Battersby, a chiropractor, received a solicitation letter from the International Chiropractic Association (the association), regarding malpractice insurance coverage, which included an application and a premium rate chart. The premium rate chart states: "Coverage is not retroactive but begins upon date of application pending approval." This document also includes a section entitled "Prior Acts Coverage" which provides: "Individuals who wish insurance for any unknown possible prior acts can acquire it for a one-time-only charge payable quarterly over two years or in advance...."

On February 13, 1981, Dr. Battersby mailed his signed application and first premium check, thereby requesting malpractice coverage. Battersby's premium included the quarterly payment for "$1,000,-000/1,000,000" basic liability coverage and for prior acts coverage.

On February 17, 1981, Dr. Battersby was served with a summons and complaint (Maricopa County Cause C-429809) that alleged malpractice on his part occurring in November of 1979. The complaint was filed by Norman McCollum, the alleged victim of Battersby's malpractice. After Norman's death on December 4, 1981, his widow, Wanda McCollum (McCollum), acting as personal representative for Norman's estate, became the sole plaintiff in the action.

The trial court made a finding in this case that Dr. Battersby did not know of this malpractice claim at the time he had mailed his application to the association. No one involved with the processing and issuance of the doctor's insurance coverage was notified of this pending lawsuit until after the premium check had been cashed and the policy received. Battersby and his attorney had decided that no notification would be the best course of action.

Battersby's insurance policy was issued in June 1981. The policy's effective date was February 13, 1981—the date of the application. On June 11, 1981, Battersby's attorney sent a certified letter to the association and its agent, Marsh & McLennan, Inc. acknowledging that a malpractice lawsuit had been filed but did not include either the summons or the complaint. Furthermore, the letter did not make reference to the date of service.

On June 22, 1981, Continental first received notice of Norman McCollum's claim against Battersby by way of a letter sent by Marsh & McLennan. In early October of 1981, Battersby entered into a Damron agreement with the McCollums whereby his answer was withdrawn and liability was admitted. *See Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969); *State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 593 P.2d 948 (App.1979). Cause C-429809 proceeded to a default hearing, and on June 14, 1982, the court awarded McCollum compensatory damages equalling $404,586, punitive damages in the amount of $500,000, and taxable costs. Battersby, pursuant to the Damron agreement, assigned all rights, claims, actions and causes of action that he had against Continental to McCollum.

McCollum's later action against Continental was tried to a court sitting without a jury, and the judgment awarded to plaintiff was $443,584.50 plus attorney's fees totalling $45,000.00 and costs. Thereafter, Continental filed a timely notice of appeal.

Continental has framed two issues for our consideration:

1. Does an applicant for an insurance policy owe the duty to the prospective insurer to advise it of new facts which materially affect the coverage, when the knowledge of such facts is obtained after the application is completed, but prior to the time the policy was issued?

2. If the answer to Question 1 is in the affirmative and the new facts learned by the prospective insured materially affect the risk, does his failure to supplement or update the information given on the application authorize the insurance carrier to deny coverage for that claim?

McCollum, in her answering brief, agrees that this appeal is comprised of these two issues and adds a third:

3. If the answer to Question 1 is in the affirmative, does the insurer waive (or is it estopped to assert) its right to deny coverage by accepting, collecting, and retaining premium payments after it has acquired knowledge of the existence of the "new facts which materially affect the coverage?"

## 1. *Continental's Issues*

We note initially that both Continental and McCollum concede that this case is one of first impression, dealing with insurance coverage for an event occurring after an application is completed but before the policy is issued. Continental urges this court to follow the general rule among other jurisdictions that both the insurer and the insured must treat each other with utmost good faith, and therefore the insured is under a continuing duty to disclose to the insurer all facts affecting the risk which arises after the application has been completed and before the policy is issued. Continental argues that to hold otherwise would allow an insured to conceal with impunity material facts that occur after the application is submitted, and therefore would be contrary to common sense and fair play.

■■■ Did Dr. Battersby have a legal duty to disclose the McCollums' suit to Continental once he learned of its existence? We think not. The key distinction between the cases relied on by Continental and this case is that we are dealing with a predated insurance policy (i.e., the insurer agrees to predate the effective date of the insurance policy to the date of application). Continental's position is that under a good faith doctrine, the rule of *uberrimae fidei,* the insured is under a duty to disclose to the insurer all facts affecting the risk which arises after the application and before the contract has been consummated, and it cites *Stipcich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928), and 12A J. Appleman, *Insurance Law and Practice* § 7275 (rev. ed. 1981), as supporting authority. However, the policy in *Stipcich* became effective on the *date of delivery* —not the date of application. The Supreme Court in *Stip-*

*cich* did address the duty arising between an insured and his insurer given a *predated* insurance policy and concluded:

An insurer may of course assume the risk of such changes in the insured's health as may occur between the date of application and the date of the issuance of a policy. Where the parties contract exclusively on the basis of conditions as they existed *at the date of the application,* the failure of the insured to divulge any later known changes in health *may well not affect the policy.*

277 U.S. at 315, 48 S.Ct. at 513. (emphasis added). This is the predated policy rule, and we believe it is applicable to the instant case. When an insurer agrees to predate a policy and accepts a premium payment for the period between the date of application and the date of issuance, then that insurer has assumed the risk of any intervening loss. *Cf. Eagle Star & British Dominions Ins. Co. v. George A. Moore & Co.,* 9 F.2d 296 (9th Cir.1925); 45 C.J.S. *Insurance* § 473(3) at 155 (1946) ("[When] a contract of insurance has been entered into, insured cannot be charged with fraud by reason of the fact that he fails to disclose matters material to the risk arising thereafter and before the actual delivery of the policy"). This risk becomes the insurer's once the insured pays the premium covering the intervening period between application and issuance. *Cf. Statewide Ins. Corp. v. Dewar,* 143 Ariz. 553, 694 P.2d 1167 (1984) (binder for automobile liability insurance). An insurer cannot collect, retain, and use premiums before delivery of a policy, and, at the same time, retain the power to void a predated policy if a loss occurs after submission of the application. *See* 6B J. Appleman, *Insurance Law and Practice* § 4266 at 110–12 (rev. ed. 1979), which states:

It appears that many companies have fallen into the practice of pre-dating policies to the time when the application for insurance was made. If no loss has occurred in the interval between application and issuance of the policy, all is well. But when such a loss has been sustained, the insurer then attempts to wriggle out

of liability on the ground that the risk has been increased without its knowledge. It is submitted that a rule of law which sustains this position is instrumental in perpetrating a fraud upon the insured. If the insurer dates back its policy, and charges a premium for such period of time, it should bear the risk of a loss occurring within the same period of time. It would be monstrous to allow the insurer to charge for a coverage which it was never prepared to assume.

In light of the foregoing, we hold that an insured is covered under a predated policy of insurance which becomes effective on the date he submits his application and tenders his premium payment, even though he fails to notify the insurer of facts which materially affect the risk associated with coverage and which arise after the effective date (i.e., the date of application and premium payment).

### 2. *McCollum's Issue*

Even if we were to hold that Battersby had a legal duty to disclose the McCollums' suit to Continental once he learned of its existence, the doctrines of waiver and estoppel would prevent Continental from prevailing in this action.

Waiver, either express or implied, has been defined as the voluntary and intentional relinquishment or abandonment of a known right. It is unilateral in that it arises out of either action or nonaction on the part of the insurer or its duly authorized agents and rests upon circumstances indicating or inferring that the relinquishment of the right was voluntarily intended by the insurer with full knowledge of all of the facts pertaining thereto.

Estoppel, on the other hand, refers to a preclusion from asserting a right by an insurer where it would be inequitable to permit the assertion. It arises by operation of law, and rests upon acts, statements or conduct on the part of the insurer or its agents which lead or induce the insured, in justifiable reliance thereupon, to act or forbear to act to his prejudice. Abatement of the right or privilege involved by way of estoppel need not be intentionally, voluntarily or purposely effected by or on the part of the insurer.

*Buchanan v. Switzerland Gen. Ins. Co.,* 76 Wash.2d 100, 108, 455 P.2d 344, 349 (1969) (citations omitted). Despite these generally recognizable distinctions between waiver and estoppel, the two terms are often employed in insurance law as synonyms and used indiscriminately. *American Nat'l Ins. Co. v. Cooper,* 169 Colo. 420, 425, 458 P.2d 257, 260 (1969).

 Continental learned of the McCollums' suit in June 1981, and yet it retained and continued to accept premiums from Battersby. When an insurer has knowledge of facts allegedly justifying a denial of coverage or the forfeiture of a policy previously issued, an unequivocal act that recognizes the continued existence of the policy or an act wholly inconsistent with a prior denial of coverage constitutes a waiver thereof. *See Greber v. Equitable Life Assur. Soc'y,* 43 Ariz. 1, 28 P.2d 817 (1934). Continental's retention of Battersby's premiums was such an act. *See Glens Falls Indem. Co. v. D.A. Swanstrom Co.,* 203 Minn. 68, 73, 279 N.W. 845, 847 (1938); 16C J. Appleman, *Insurance Law and Practice* § 9303 (rev. ed. 1981); 45 C.J.S. *Insurance* § 716(b) (1946).

An insurer cannot treat a policy as void for the purpose of denying coverage, and at the same time treat it as valid for the purpose of retaining premiums collected thereon. *See Collier v. General Exch. Ins. Corp.,* 58 Ariz. 122, 118 P.2d 74 (1941); *Glens Falls Indem. Co.,* 203 Minn. at 73, 279 N.W. at 847 (the insurer is "not privileged 'to run with the hare and hold with the hounds' until such time as it should become plain on which side its advantage lay"). Continental is barred by both waiver and estoppel from avoiding its obligations under the policy.

### 3. *Attorney's Fees*

Both parties request attorney's fees on appeal. Attorney's fees are allowed on appeal in actions arising out of contract. A.R.S. § 12–341.01; *Wenk v. Horizon Moving & Storage Co.,* 131 Ariz. 131, 639 P.2d

321 (1982). In the exercise of our discretion, we grant McCollum's request. *See* rule 21(c), Arizona Rules of Civil Appellate Procedure.

Judgment affirmed.

JACOBSON, P.J., and CONTRERAS, J., concur.