NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

GLIC REAL ESTATE HOLDING, LLC, a Delaware limited liability company, *Plaintiff/Appellee*,

*v.*

NORTHVIEW HOLDINGS, LLC, an Arizona limited liability company; TOWN LAKE ENTERPRISES, L.L.C., an Arizona limited liability company; GERALD FANDYTIS, *Defendants/Appellants*.

No. 1 CA-CV 13-0065
FILED 3-27-2014

---

Appeal from the Superior Court in Maricopa County
No. CV2011-019852
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

---

COUNSEL

Quarles & Brady, LLP, Phoenix
By Isaac M. Gabriel and Amy D. Reyes
*Counsel for Plaintiff/Appellee*

Berens Kozub Kloberdanz & Blonstein, PLC, Scottsdale
By Daniel L. Kloberdanz
*Counsel for Defendants/Appellants*

_____

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

_____

**C A T T A N I,** Judge:

**¶1**        Northview Holdings, LLC, Town Lake Enterprises, LLC, and Gerald Fandytis (collectively, "Appellants") appeal from the entry of summary judgment in favor of GLIC Real Estate Holding, LLC, ("GLIC") and the denial of Appellants' cross-motion for summary judgment. Appellants assert in particular that the superior court erred by (1) finding that the trustees' sale of the subject property did not extinguish Appellant's liability for accrued property taxes as of the date of the sale, or alternatively, by determining that property taxes began to accrue on the first date of every year, rather than on the date the taxes were due, and (2) rejecting Appellant's claim that GLIC failed to mitigate its damages. For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        In August 2006, GLIC (through a predecessor in interest) loaned $4.2 million to Northview Holdings, LLC ("Northview"), secured by a Promissory Note ("Note") and Deed of Trust, Assignment of Rents and Leases, and Security Agreement on property located near the Arrowhead Mall in Glendale, Arizona ("Property"). The Note was non-recourse, limiting the lender's remedy upon default to recovery of the Property, but the Note contained specific full recourse "carve-outs" for accrued taxes and other assessments. Paragraph 11(b) of the Note provided specifically as follows:

> Notwithstanding [non-recourse provisions], however, Borrower and each member of Borrower shall be fully and personally, and jointly and severally, liable to the holder of this Note for all claims, demands, damages, losses, liabilities, fines, penalties, fees, liens, costs and expenses, including attorneys' fees, suffered or incurred by Lender on account of or in connection with:
>
> . . . .

> (f)     Any taxes or assessments relating to the Property encumbered by the Deed of Trust which accrue prior to foreclosure sale under the Deed of Trust or any transfer of said Property in lieu of foreclosure[.]

¶3          In August 2006, Town Lake Enterprises, LLC, ("Town Lake"), Gerald Fandytis, and Lorenda Hartwell signed an unconditional guaranty of Northview's obligations ("Guaranty"). Paragraph 1(a) of the Guaranty provided as follows:

> Guarantor unconditionally, absolutely and irrevocably guarantees . . . any and all claims, demands, damages, losses, liabilities, fines, penalties, fees, liens, costs and expenses, including attorney's fees, suffered or incurred by Lender on account of or in connection with:
>
> . . . .
>
> > vi) Any taxes or assessments relating to the Property encumbered by the Deed of Trust which accrue prior to foreclosure sale under the Deed of Trust or any transfer of said Property in lieu of foreclosure.

¶4          Northview's tenant (Ultimate Electronics) vacated the Property, and Northview subsequently defaulted on the Note. A court-appointed receiver took control of the Property in mid-June 2011 until GLIC obtained title to the Property through a credit bid of $2.8 million at a trustee's sale on September 26, 2011. Despite GLIC's demand, Appellants did not pay the accrued property taxes and interest for the Property, which totaled approximately $121,000 for the second half of 2010, the first half of 2011, and the second half of 2011 (prorated from June 30, 2011 through September 26, 2011).

¶5          GLIC paid the property taxes and, in November 2011, sued Northview for breaching the Note, and Town Lake, Fandytis, and Hartwell for breaching the Guaranty by failing to pay property taxes accrued as of the date of the trustee's sale. GLIC later dismissed with prejudice its complaint against Hartwell.

¶6          In April 2012, GLIC filed a motion for summary judgment as to all of its claims against Appellants. GLIC argued that it was entitled to judgment as a matter of law because Appellants defaulted on their obligations (Northview under the Note and Town Lake and Fandytis

under the Guaranty) by refusing to pay property taxes accrued prior to the Property's foreclosure. Appellants filed a cross-motion for summary judgment, asserting that any claims for property taxes were fully satisfied by the $2.8 million in proceeds from the trustee's sale of the Property, or alternatively, that Appellants were not liable for taxes not yet due and payable at the time of the trustee's sale. Appellants further asserted that GLIC should have rented the Property prior to the trustee's sale, and thus failed to mitigate its damages. The superior court granted GLIC's motion for summary judgment and denied Appellants' cross-motion, directing entry of final judgment in GLIC's favor.

¶7 Appellants timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).[1]

## DISCUSSION

¶8 Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). We review *de novo* the superior court's grant of summary judgment, viewing the facts in the light most favorable to the party against whom judgment is entered. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 193, 195, 805 P.2d 1012, 1014, 1016 (App. 1990). We will affirm summary judgment only "if the facts produced in support of the claim [] have so little probative value, given the quantum of evidence required," that no reasonable person could find for its proponent. *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.

## I. Obligation to Pay Accrued Property Taxes.

¶9 Appellants argue that the superior court should have ruled that their property tax obligations were fully satisfied by the $2.8 million in proceeds generated from the trustee's sale. They assert that, under Paragraph 8.3 of the Deed of Trust, property tax expenditures should have been reimbursed from the proceeds of the trustee's sale before outstanding principal amounts, and that their obligation to pay the taxes was thus extinguished by proceeds from the sale.

---

[1] Absent material revisions after the relevant date, we cite a statute's current version.

¶10 Appellant's obligations to pay property taxes arose, however, under the Note and/or Guaranty, and not under the Deed of Trust. Accordingly, and because the Deed of Trust did not limit recovery of taxes and assessments or otherwise conflict with the Note and the Guaranty, Appellants remained liable for accrued property taxes under the Note and Guaranty following the trustee's sale.

¶11 Paragraph 8.3 of the Deed of Trust provided as follows:

Application of Sale Proceeds. The proceeds of any sale under this Deed of Trust will be applied in the following manner:

FIRST: Payment of the costs and expenses of the sale, including without limitation Trustee's fees, legal fees and disbursements, title charges and transfer taxes, and payment of all expenses, liabilities and advances of Trustee, together with interest on all advances made by Trustee from date of disbursement at the applicable interest rate under the Note from time to time or at the maximum rate permitted to be charged by Trustee under the applicable law if that is less.

SECOND: Payment of *all sums expended by Lender under the terms of this Deed of Trust and not yet repaid*, together with interest on such sums from date of disbursement at the applicable interest rate under the Note from time to time or the maximum rate permitted by applicable law if that is less.

THIRD: Payment of all other indebtedness secured by this Deed of Trust in any order that Lender chooses.

FOURTH: The remainder, if any, to the person or persons legally entitled to it.

(Emphasis added.) This provision did not eliminate Appellants' obligations under the Note and/or Guaranty, and instead simply detailed the order in which proceeds from a trustee's sale are to be applied. The provision did not convey rights on the borrower and guarantors other than a right to proceeds that exceeded the amounts otherwise recoverable by the lender.

¶12 Appellants do not dispute that the proceeds from the sale were insufficient to satisfy all of their obligations under the Note and/or Guaranty. Accordingly, the superior court did not err by finding that

Appellants remained obligated to pay taxes that accrued as of the date of the trustee's sale notwithstanding Paragraph 8.3 of the Deed of Trust.

¶13        Appellants alternatively argue that the superior court erred by concluding that they were obligated to pay taxes that were not yet due as of the date of the trustee's sale.  Appellants' obligation to pay "accrued" taxes, however, was not extinguished simply because the trustee's sale occurred prior to the due date for payment of the taxes to Maricopa County.

¶14        Under A.R.S. § 42-17153, a property tax lien attaches to real property on January 1 of each year and is not satisfied or removed until taxes are paid.  Section 42-18052(A) sets October 1 as the due date for the first half of property taxes and March 1 of the following year as the due date for the second half of taxes.  To "accrue" means "[t]o accumulate periodically."  Black's Law Dictionary (9th ed. 2009).  An accrued tax is one that "has been incurred but not yet paid or payable."  *Id.*  Thus, the setting of due dates under A.R.S. § 42-18052 does not change the fact that taxes begin to accrue on January 1 of each year.

¶15        Paragraph 11(b)(f) of the Note and Paragraph 1(a)(vi) of the Guaranty contain identical language requiring that the borrower (Northview) and guarantors (Town Lake and Fandytis) reimburse GLIC for "[a]ny taxes or assessments relating to the Property encumbered by the Deed of Trust *which accrue prior to the foreclosure sale* under the Deed of Trust or any transfer of said Property in lieu of foreclosure."  (Emphasis added.)  Because the tax obligation at issue accrued prior to the due date for payment of the taxes, the superior court did not err by finding that Appellants remained liable for any unpaid taxes that had accrued as of the date of the trustee's sale.

## II.    Mitigation of Damages.

¶16        Appellants argue that the superior court erred by granting summary judgment in favor of GLIC because there was a genuine issue of material fact regarding whether GLIC mitigated its damages.  Appellants argue specifically that there was a factual issue as to whether GLIC improperly failed to market and lease the Property during the 3 ½-month receivership prior to the trustee's sale in September 2011.  The superior court found that Appellants waived their right to object to the receiver's conduct by failing to object to the receiver's actions prior to the receiver being discharged.  The court further found that Appellants did not support their claim with admissible evidence.

**¶17** We agree that Appellants waived their right to object to the court-appointed receiver's actions by not making any such objection before the receiver was discharged. After Northview defaulted on its loan obligations, a receiver was appointed to protect the Property pending transfer of title to a new owner. *See Midway Lumber, Inc. v. Redman*, 4 Ariz. App. 471, 472, 421 P.2d 904, 905 (1967) (noting that a receiver is "a ministerial officer of the court, acting under its direction for the benefit of all parties in interest"). Appellants never challenged the receiver's actions, and they waived their right to do so by failing to object before the receiver was discharged. *See McCollum v. Cont'l Cas. Co.*, 151 Ariz. 492, 495, 728 P.2d 1242, 1245 (App. 1986) (noting that waiver may be shown by inaction).

**¶18** Waiver notwithstanding, Appellants have not presented competent evidence that the receiver acted improperly. Nor have they presented competent evidence or otherwise met their burden to show that GLIC failed to mitigate its damages. *See Solar-West, Inc. v. Falk*, 141 Ariz. 414, 419, 687 P.2d 939, 944 (App. 1984) (stating that a party in breach has the burden of showing mitigation was reasonably possible and that the non-breaching party did not make a reasonable attempt).

**¶19** The receiver only controlled the Property for a 3 ½-month period prior to the trustee's sale; Northview controlled the Property prior to the receiver's appointment. Moreover, the receiver was not tasked with maximizing revenue for Northview during that period, but rather with protecting the Property, and Appellants have not alleged that the receiver failed to protect the Property.

**¶20** Appellants assert that GLIC should have directed the receiver to lease the Property to some type of tenant prior to the trustee's sale. Appellants cite no authority, however, for the proposition that a lender can direct the conduct of a court-appointed receiver in such a manner, and we decline to find such an obligation on the part of the lender—particularly given the fact that the lender is not obligated to purchase the Property at a pending trustee's sale, and leasing the Property for a particular period of time to a specific tenant may not be in the best interests of a party or parties who may be interested in purchasing the Property.

**¶21** Furthermore, even assuming such an obligation, Appellants did not present competent evidence that a tenant was available to lease the Property on terms favorable to prospective owners during the short period of time during which the receiver controlled the Property.

Appellants' only evidence in support of their position was an affidavit from Fandytis, in which he stated that he received or was aware of offers to lease the Property, but that he could not entertain them because the Property was in receivership. The affidavit also stated that the receiver had taken down leasing signs prior to the trustee's sale.

**¶22** The superior court properly rejected the affidavit as inadmissible hearsay. *See* Ariz. R. Civ. P. 56(e)(1). Appellants did not present any type of affidavit or evidence from a prospective tenant willing to lease the Property, much less an affidavit detailing terms that would have been acceptable to a receiver tasked with protecting the Property pending foreclosure. We further note that in June 2011, shortly before the receiver took control of the Property, Northview's counsel acknowledged in correspondence to GLIC's counsel that attempting to lease the Property had been difficult particularly in light of vacancy rates for "big box" stores and the fact that the building had been custom built for Ultimate Electronics. Accordingly, the court did not err by finding that Fandytis' affidavit inadmissible and denying Appellants' claim that GLIC failed to mitigate its damages.

## III.   Attorney's Fees and Costs.

**¶23** Appellants and GLIC have requested their attorney's fees and costs on appeal pursuant to the terms of the Note and Guaranty and A.R.S. § 12-341.01(A) and ARCAP 21.

**¶24** When a contract contains an attorney's fees provision, we will grant fees consistent with such a provision. *A. Miner Contracting, Inc., v. Toho-Tolani Cnty. Improvement Dist.*, 233 Ariz. 249, 261, ¶ 40, 311 P.3d 1062, 1074 (App. 2013). Here, Paragraphs 9 and 11(b) of the Note and Paragraph 1(a) of the Guaranty provide that the lender is entitled to attorney's fees and costs incurred in pursuing claims for payment of taxes or assessments relating to the Property. Accordingly, and because GLIC is the prevailing party on appeal, we grant GLIC its reasonable attorney's fees and costs on appeal upon GLIC's compliance with ARCAP 21. Appellants' request for attorney's fees and costs on appeal is denied.

## CONCLUSION

¶25        For the foregoing reasons, we affirm the superior court's entry of summary judgment in favor of GLIC and the denial of Appellants' cross-motion for summary judgment.



Ruth A. Willingham · Clerk of the Court
FILED: MJT