526 P.2d 1080

**Janet ROSCOE, Administratrix of the Estate of Doyle E. Roscoe, Deceased, J. E. Roscoe, Guardian of the Persons and Estates of Donna Roscoe and Destry Roscoe, minors; Roscoe Farming Corporation, an Arizona corporation, Appellants,**

v.

**BANKERS LIFE INSURANCE COMPANY OF NEBRASKA, Appellee.**

**No. 1 CA–CIV 2113.**

Court of Appeals of Arizona,
Division 1, Department C.

Oct. 3, 1974.

Rehearing Denied Nov. 12, 1974.

Review Denied Dec. 17, 1974.

Robert C. Forquer, Phoenix, for appellants.

Jennings, Strouss & Salmon by Stephen A. Myers, Phoenix, for appellee.

## OPINION

FROEB, Judge.

We must determine in this case whether life insurance coverage came into existence

for Doyle E. Roscoe (Roscoe), deceased, as a result of dealings between him and the insurance company prior to his death in the absence of the issuance of a formal written policy. Summary judgment was entered in the trial court in favor of Bankers Life Insurance Company of Nebraska (Bankers Life), appellee, and against Janet Roscoe, J. E. Roscoe and Roscoe Farming Corporation, an Arizona corporation, appellants.

Our decision is focused upon the interpretation of documents entitled "Application for Insurance" and "Receipt," for it is upon the language of these documents that the Roscoes base their claim that a contract of life insurance was formed notwithstanding the fact that no medical examination of Doyle E. Roscoe was completed and no written policy of insurance was issued by Bankers Life.

The undisputed facts which underlie the claim for coverage presented here begin with an application for life insurance for the sum of $50,000.00 made by Doyle Roscoe to Bankers Life on February 8, 1971. At that time Doyle E. Roscoe and Jerome E. Roscoe, his father, in conjunction with Earle Woodland of Agency Management, Inc., prepared a form of application prescribed by Bankers Life referred to as Part I.[1] A similar application was pre-pared for Jerome E. Roscoe, since he wished to purchase life insurance on his own life. At the same time a check in the amount of $350.00 was given by Doyle Roscoe to Earle Woodland as part payment of the first annual premium for the two policies applied for. The check was made payable to Bankers Life and bore the same date as the application.

The application for insurance was in two parts. Part I consisted of questions which were answered by Roscoe and which are typical of many applications for life insurance. Part II of the application for insurance consisted of the medical report of the examining physician and was required by rules of Bankers Life which were in effect at that time. The necessity for the completion of Part II is mentioned in Part I of the application for insurance. After completing Part I, Roscoe was advised that Bankers Life required a medical examination and an appointment was made for him by the company. It developed that Roscoe did not keep the appointment for reasons which do not clearly appear from the record and no medical examination was ever conducted. As a result, Part II of the application was not completed. Thereafter, on March 24, 1971, Doyle Roscoe was killed in an airplane crash. Upon receipt of this information, Bankers Life ad-

---

1. The relevant portion of Part I reads as follows:

"It is hereby agreed by the undersigned that: 1. The following statements and answers given in this application Part I (and Part II, if required by Company rules) are true and complete to the best of my knowledge and belief and correctly recorded and are made to induce the Company to issue the policies applied for; 2. Except as otherwise provided in the Receipt with the same number as Part I of this application, the Company shall incur no liability hereunder unless a policy is issued and delivered to the Owner and the full first premium is paid, and then only if the statements and answers made in this entire application represent, without material change, true and complete statements and answers to the same questions as of the time of delivery of the policy; if each of these conditions is met, the policy becomes effective on the Policy Date; 3. The Company shall have sixty days from the date here-of within which to consider and act upon this application and, with respect to any insurance applied for, if within such period a policy has not been delivered or if notice of approval or rejection of such insurance has not been given, then this application for insurance shall be deemed to have been declined by the Company unless such insurance shall have become effective under the provisions of the Receipt attached hereto; 4. Acceptance of any policy issued on this application shall be a ratification of those changes as recorded under #14 above provided such are in accordance with the insurance statutes or regulations of the State whose laws are applicable.

"It is hereby understood that no agent, medical examiner or other person, except the President or Secretary of the Company has authority to make or modify any contract of insurance on behalf of the Company, and any such contract modification or waiver must be in writing signed by the President or Secretary and included in the policy."

vised Roscoe's father that the insurance policy for which he had applied had never come into existence and as a consequence a check was mailed to the Roscoes in the amount of $350.00, the sum previously paid toward the first annual premium. Bankers Life informed the Roscoes that coverage was denied. The check was not cashed by the Roscoes, but was returned to Bankers Life. This litigation then resulted.

When Part I of the Bankers Life application was filled out and the check for partial payment of the first annual premium was given, a detachable document called "receipt" was signed by Earle Woodland, Jr., of Agency Management, Inc., and given to Roscoe.[2]

The Roscoes contend that the completion of Part I of the application for insurance and the payment of the $350.00 brought into existence a contract for life insurance under the language set forth in Part I and the detached receipt. Bankers Life argues that the application was incomplete without the physical examination and the completion of Part II.

■ A contract for insurance, like any other contractual undertaking, requires certain basic elements, namely, parties competent to contract, a subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. Employers' L.A.

Corporation v. Industrial Commission, 48 Ariz. 402, 62 P.2d 320 (1936).

The law pertaining to the formation of a life insurance contract is no different from contracts generally, as is pointed out in Acacia Mutual Life Association v. Berry, 54 Ariz. 208, 94 P.2d 779 (1939):

". . . A contract of insurance, like any other contract, is completed by an offer and acceptance. In an insurance policy, the offer is generally the written application, accompanied by the report of the medical examiner, and the acceptance occurs when the insurer agrees to accept the application and to issue the policy, unless there has been some other condition precedent to the completion of the contract agreed to by the parties." (54 Ariz. 208, 214, 94 P.2d 770, 772)

There have been cases dealing with the question of whether a contract for temporary life insurance arises pending issuance of a formal policy by the insurer. An annotation at 2 A.L.R.2d 943–1022 collects and analyzes a great variety of decisions dealing with the legal effect of "receipts," "temporary receipts," "conditional receipts," and the like. It is not surprising that the courts have approached the interpretation of these writings upon different theories and with varied results. The "temporary receipts" in each case invari-

---

2. The language of the receipt is as follows:

"This receipt must be detached and delivered to applicant when payment is made with the Application, otherwise it must not be detached. The Bankers Life Insurance Company of Nebraska acknowledges receipt of $_____ on account of the first premium(s) on the insurance described in the application bearing the same serial number as shown above for insurance on _____ the proposed insured. If this application (and Part II if required by Company rules) is completed satisfactorily and received by the Company and the Company's authorized officers at its Home Office shall determine from any medical examination, tests and investigations as may be required by the Company that the proposed insured is on this date insurable and acceptable under the rules and practices of the Company for the policy or policies applied for without waiver or modification and at the rate of premium paid with the application,

then the insurance under such policy or policies applied for and subject to their terms shall be in effect as to the date of this receipt; unless all conditions precedent are fulfilled, no insurance shall take effect hereunder and the payment evidenced by this receipt shall be returned.

"The issuance of any policy or policies as requested in the application shall terminate any insurance in effect under this receipt and in any event any insurance under this receipt shall terminate within 60 days from the date hereof or upon refund of this payment in the form of the Company's check, whichever first occurs. The maximum limit of insurance for which the Company may be bound under this receipt, including any previously issued or applied for in the Company, is $100,000 of life insurance including accidental death benefit ($25,000 if the proposed insured is under age 20 or over age 60 at nearest birthday)."

ably differ as to their wording and therefore our first consideration here is to examine the wording of the application for insurance and receipt which led to this litigation.

Part I of the application is the first element of Roscoe's offer to Bankers Life for insurance. There it is made quite clear that "except as otherwise provided in the receipt . . ." the company shall incur no liability unless a policy is issued and the premium paid. The receipt, which is the next element, was made and given to Roscoe the same day as the application was filled out, in return for which Roscoe paid over the part premium. Beyond acknowledging payment of money, the receipt provides: "If this application (and Part II if required by company rules) is completed satisfactorily and received by the company and the company's authorized officers at its home office shall determine from any medical examination, tests and investigation *as may be required* by the company that the proposed insured is on this date insurable . . . then the insurance under such policy . . . shall be in effect as of the date of this receipt; unless all conditions precedent are fulfilled, no insurance shall take effect hereunder . . . ." It is undisputed that Part II of the application is the medical report which was to be completed by the examining physician and that not only was a medical examination required by the company rules, but that Roscoe was so informed when he made out Part I of the application.

■ In urging the court to find a contract for temporary insurance, appellants contend that the application and receipt are ambiguous, calling for application of the rule that where ambiguity exists the writing will be construed most strongly against the preparer. But, at the threshold, we determine that there is no ambiguity, and therefore proceed to declare the legal effect of the writings and to consider the plain meaning of their words.

The medical examination and Part II of the application were necessary to complete Roscoe's offer to Bankers Life for the policy in question. These were conditions precedent to acceptance by the company of the offer. Both parties were aware of this. Nowhere in either Part I or the receipt is there language which could reasonably be construed as bringing into effect the sought for insurance coverage upon the issuance of the receipt and payment of a part premium.

It is true, as appears from the receipt, that the insurance coverage for the applicant is in force on the date of the receipt *if later,* as a result of the medical examination, the applicant is found to have been insurable *on that date.* In other words, the medical status of the applicant *on the date of the receipt* is inquired into and determined by the physician and his insurability is determined by the company as of that time, not as of the date of the medical examination. This is, of course, a benefit to the proposed insured for it protects him against a change in his physical condition between the date of the issuance of the "receipt" and the date when his completed application is accepted by the company. We disagree with appellants' contention that no benefit reaches the applicant where he thus pays money to the company and is subject to having his application rejected later with return of the money. At the same time, it is unreasonable to think that it was the intention of either Roscoe or Bankers Life that there would be interim coverage regardless of the physical status of the applicant. Such a situation would fly in the face of the underwriting and actuarial criteria which are applied by all life insurers. It would allow one who is not insurable for medical reasons to obtain coverage without knowledge of the company until it discovered the true condition of the insured.

■ We hold that where a physical examination and physician's medical questionnaire is required under terms and provisions found here, the applicant must arrange for these to be furnished to the company before his application is completed

and before coverage can arise. See for example, Wolters v. Prudential Insurance Co. of America, 296 F.2d 140 (8th Cir. 1961); Corn v. United America Life Insurance Co., 104 F.Supp. 612 (D.Colo. 1955); Bobbitt v. American National Insurance Co., 419 S.W.2d 919 (Tex.Civ. App.1967); Silva v. Sentinel Life Insurance Co., 361 S.W.2d 731 (Tex.App.1962).

An Arizona decision bearing upon the question here is Turner v. Worth Insurance Company, 106 Ariz. 132, 472 P.2d 1 (1970), an automobile insurance case. The court found there that a contract of temporary insurance came into existence when the binding receipt issued and the part premium was paid. An element present here and not present in Turner is the condition precedent that the applicant have his physical condition examined and the results of that examination reported on a form to be furnished to the company as part of his application. In this regard, the difference in underwriting risk between an automobile insurance and life insurance applicant obviously enter into what is required of each before a company will accept the risk. In Turner the receipt was found to set forth the material terms of a contract of insurance. The proposed insured had nothing more to do. Following a line of authority beginning with Gaunt v. John Hancock Mutual Life Ins. Co., 160 F.2d 599 (2d Cir. 1947), the Arizona Supreme Court found that the insurance contract came into effect immediately, subject only to the right of the company to terminate the contract if it later became dissatisfied with the risk before a policy issued. Neither the Turner nor Gaunt fact situation compels such a result in this case.

The key factor in this case which distinguishes it from authorities cited by appellant is the failure of Roscoe to obtain the required medical examination, for without it the essential element of insurability, physical condition, was unknown to the company. In those cases involving analogous premium receipts and in which the

physical condition was performed and death intervened thereafter but before issuance of the policy, some courts have found coverage on the theory that the applicant had done all that was necessary and would have met the underwriting standards of the company had it acted before his death. These decisions have often required that the company determine in good faith the applicant's insurability based on the medical examination and to provide coverage accordingly. Some courts have placed the burden of proof on the company to demonstrate uninsurability under such circumstances.

We are asked to apply the holding of the Idaho Supreme Court in Toevs v. Western Farm Bureau Life Insurance Company, 94 Idaho 151, 483 P.2d 682 (1971). In that case, as in the present case, the applicant did not provide the physical examination required by the company. In determining that a contract for temporary insurance was in effect, the Idaho court found that the omission of the required physical examination was cured by evidence introduced at the trial of the deceased's good health prior to and at the time of the application for insurance. The holding, however, follows a determination that the writings involved were ambiguous and confusing, calling into play a rule that where the language of a contractual provision may be given two meanings, one of which permits recovery and the other forbidding it, the contract is to be construed in favor of the insured. In applying this rule, the conclusion of the Idaho court in the Toevs case is that coverage took effect immediately upon the filling out of the application and payment of the premium. The failure to provide the medical examination was therefore not a condition of the contract between the parties. We conclude, however, that we cannot apply the same reasoning in this case because we have found the writings not to be ambiguous, thereby making the provision for a medical examination a condition precedent to insurability.

Another case in which the applicant did not provide the physical examination required by the company and died prior to the issuance of a policy is Prudential Insurance Company of America v. Lamme, 83 Nev. 146, 425 P.2d 346 (1967). The Nevada court found that the receipt created a temporary contract of insurance, subject only to the condition that it could be rejected by the insurance company prior to his death. The court in that case, however, rejected the proposition that the requirement for a medical examination was a condition precedent to a complete application. Since we view the terms of the application and receipt as clearly requiring otherwise, we cannot apply the holding of the *Lamme* case.

 Finally, appellants contend that an oral contract for insurance arose on the basis of a statement by Jerome Roscoe that he and Doyle Roscoe were told by John Henderson, a representative of Agency Management, Inc., that upon payment of the first premium and issuance of the receipt, they would immediately be covered by temporary insurance. The affidavit was correctly rejected by the trial court as not interposing a genuine issue of material fact inasmuch as such testimony, if offered at the trial, would violate the parol evidence rule. Such representations are clearly contrary to the written document involved and would not be admissible to vary their terms.

The circumstances of this case are indeed unfortunate, yet our conclusion is the only legal result obtainable from the incomplete dealings of the parties as they sought to create a life insurance contract. We hold that there was no genuine issue of material fact presented to the trial court and that it held correctly that Bankers Life was entitled to judgment as a matter of law.

Affirmed.

WREN, P. J., and NELSON, J., concur.