583 P.2d 1368

**Walter PAWELCZYK and Agnes Pawelczyk, his wife, Appellants,**

v.

**ALLIED LIFE INSURANCE COMPANY, a corporation, Appellee.**

**No. 1 CA–CIV 3707.**

Court of Appeals of Arizona, Division 1, Department A.

June 8, 1978.

Rehearing Denied July 20, 1978.

Review Denied Sept. 7, 1978.

---

G. David Gage, Phoenix, for appellants.

Lewis & Roca by D. W. Grainger, Paul G. Ulrich, Richard W. Bowers, Phoenix, for appellee.

## OPINION

NELSON, Judge.

The plaintiff, Walter Pawelczyk (Pawelczyk), appellant, applied for $50,000 worth of life insurance, to be issued by appellee, Allied Life Insurance Company (Allied). The application contained a provision which stated in part that the insurance would take effect only if and when the application was approved by Allied at its home office. Pawelczyk submitted to a medical examination and paid the first premium, but the application was not acted upon prior to the time that he suffered a serious heart attack. The application was subsequently rejected and appellants commenced this action to have the policy declared in effect and for punitive damages. Appellants contend that under the circumstances, Allied was under a duty to approve the application or, alternatively, that it is estopped to deny coverage. The trial court in the summary judgment here on appeal sustained Allied's position that it acted within its rights in rejecting the application.

Pawelczyk filled in Part I of the application on January 10 (all relevant dates are 1974 unless otherwise indicated). This part of the application was taken by Philip Susic of the Beaton-Susic Insurance Agency in Phoenix. On January 22 the application was received by Allied's Phoenix branch

office. The physical examination was conducted by Pawelczyk's personal physician on January 25. He found Pawelczyk in good health. The medical questionnaire and report of physical examination (Part II of the application) were apparently received by Allied's Life Services Division on January 28 and the rest of the application was received on February 8.

On February 13, Allied's servicing agent sent a memo to the Beaton-Susic Agency requesting that Pawelczyk respond to several questions on the medical questionnaire which had not been answered. On February 15 the servicing agent wrote to Pawelczyk's doctor, requesting an "Attending Physician's Statement". The letter included the following specific request:

"Please furnish details regarding the tests given the applicant to determine the levels of cholesterol and triylycerides [sic] present in his blood. The applicant states he was treated for hyperlipidemia."

Hyperlipidemia is an elevated lipid (fat) level in the blood.

Receipt of the first premium was acknowledged at Allied's home office on February 18. Under date of February 20, Pawelczyk's physician forwarded the materials requested in the letter of February 15. These showed *inter alia* that Pawelczyk had experienced chest pain in 1969 and that in 1971 he had been diagnosed as having "Type IV hyperlipoproteinemia", for which medication and a low fat diet were prescribed. "Type IV hyperlipoproteinemia" is indicated in *Dorland's Illustrated Medical Dictionary* 25th ed. (1974) to be an excess of lipoproteins, particularly triglycerides, in the blood. Pawelczyk had a cholesterol count of 275 and a triglyceride count of 267 in 1971. Both showed improvement (decrease) to generally normal levels thereafter. A portion of Allied's general underwriting rules or policies sub-entitled "Hypercholesterolemia --- hyperlipemia" states:

"The normal value for blood cholesterol is approximately 200 mg. per cent. Elevation of this lipid fraction is common in patients with arteriosclerosis and especially those with coronary artery diseases. While a direct relationship of hypercholesterolemia to coronary artery disease has not been proven, applicants having levels above 250 mg. per cent associated with chest pain are of underwriting concern.

\*    \*    \*    \*    \*    \*

3. Hypercholesterolemia (cholesterol greater than 250 mg. %):
Cause Known . . . . . . . . . . . . Rate for Cause
Unknown Cause:
  Family history negative
  for cardiovascular or renal
  deaths . . . . . . . . . . . . . . . . Usually 0
  Otherwise . . . . . . . . . . . . . . Refer to Med. Dir."

The materials forwarded by Pawelczyk's physician also showed that he had been seen by a cardiovascular surgeon in 1971 when he had experienced dyspnea and that Pawelczyk's son died of "congenital heart disease" in 1968.

Allied's records show receipt of the requested additional information on February 28, with the additional notation that it was "placed in file to refer to Medical Director." The medical director was not in his office in the week designated "3/5/74". Pawelczyk's heart attack occurred on March 2. It was shortly thereafter brought to the attention of Allied, who then sought additional information on Pawelczyk's condition. Some of the reports received referred to a parent and collaterals and a "strong family history of myocardial infarction." The application was eventually rejected and the premium returned. Allied's manager for Life Services filed an affidavit in support of its original motion for summary judgment, stating in substance that based upon his history and the company's policies and procedures, Pawelczyk did not qualify for the standard insurance policy he applied for, and that for this reason, the application was rejected. The motion was initially denied, and Allied subsequently stipulated during proceedings on its renewed motion that rejection of Pawelczyk's application was based upon the heart attack.

Two other affidavits were before the court prior to its ruling. An affidavit by Pawelczyk's physician reaffirmed his earlier

conclusions as to his patient's good health and insurability, and absence of evidence of heart or arterial disease as of the date of the insurance examination. This affidavit also stated that the chest pain experienced by Pawelczyk in 1969 was related to bronchitis, that the reference of Pawelczyk to the cardiovascular surgeon was relative to the bronchitis condition, not heart problems, and that his heart attack was unanticipated. There was also an affidavit of Philip Susic, who stated that he told Pawelczyk in connection with taking his application and as an inducement for him to proceed with the application to Allied and pay the premium that, ". . . whether the policy was issued depended upon the physical examination, and that if he passed the physical examination, the insurance coverage was in effect from that date."

An affidavit made by Pawelczyk was attached to his post-judgment motion for new trial or reconsideration, but this affidavit, which was essentially confirmatory of the Susic affidavit, was rejected as improper newly-discovered evidence.

The provision which is at the crux of this controversy is located not in a "binder" or "conditional receipt" [1], but in Part I of the application itself, above the line designated for the applicant's signature. The critical language is as follows:

"IT IS UNDERSTOOD AND AGREED . . . that the insurance applied for shall take effect only if and when (a) this Application is approved by the Company at its Home Office in Des Moines, Iowa and (b) the first premium is paid while the Proposed Insured is in good health, provided there is then no change in the insurability of the Proposed Insured since the date hereof."

Pawelczyk contends that the logical construction to be placed upon the above provision, read as a whole, is that an applicant's insurability is to be determined on an objective basis as of the time the first premium is paid, and the application approved or disapproved upon such an objective or good faith determination without consideration of subsequent events. Pawelczyk points out that the language following "paid" in part (b) of the provision refers to health and change in insurability, and argues that the "health change inquiry stops" with payment of the first premium. By this theory of construction, Pawelczyk's insurability would be based upon the information available to the insurer no later than February 18, when receipt of the first premium was acknowledged at the home office. Pawelczyk argues that even if the language of the quoted provision is not perceived to be clearly to this effect, it is at least ambiguous and the ambiguity must be resolved against the insurer. Pawelczyk finds the provisions or combination of provisions in question unique and cites no closely analogous case supportive of his position.

Preliminarily, an application for life insurance has been viewed in Arizona as an offer to contract, which is subject to acceptance in the manner therein specified. *Acacia Mutual Life Association v. Berry*, 54 Ariz. 208, 94 P.2d 770 (1939); *Roscoe v. Bankers Life Insurance Company*, 22 Ariz. App. 282, 526 P.2d 1080 (1974). Approval at the home office is one familiar mode of acceptance. *See* 9, *G. Couch on Insurance 2d* § 39:63 (2d ed. 1962); *Acacia, supra; Killpack v. National Old Line Insurance Company*, 229 F.2d 851 (10 Cir. 1956); and *cf. John Hancock Mutual Life Insurance Company v. McNeill*, 27 Ariz.App. at 504, 556 P.2d at 805, n. 1. Such provisions have been given effect so as to deny coverage for losses occurring prior to home office approval. *Killpack, supra; Wallace v. Prudential Insurance Company of America*, 12 Ill.App.3d 623, 299 N.E.2d 344 (1973).

The provisions of a life insurance contract will be construed according to the ordinary meaning of the language employed as it would be perceived by the

1. *See John Hancock Mutual Life Insurance Company v. McNeill*, 27 Ariz.App. 502, 556 P.2d 803 (1976), for a discussion of the commonly used forms of binders and conditional receipts and the legal effects thereof.

layman[2], and any real ambiguity will be resolved against the insurer who drafted the policy or other relevant instrument[3]. Courts must give effect to agreements as they are written, however, and ambiguities will not be found or created where they do not exist in order to avoid a harsh result. *Harbor Insurance Company v. United States Automobile Association*, 114 Ariz. 58, 559 P.2d 178 (App.1976); and *see also Dairyland Insurance Company v. Beekman*, 118 Ariz. 294, 576 P.2d 153 (App.1978).

Here, the provision in question sets forth two independent pre-conditions to the attachment of the risk: (1) approval of the application at the home office, and (2) payment of the premium under certain specified conditions of health and insurability. While Pawelczyk argues that the language following "paid" in part (b) is surplusage if the company may consider post-payment health changes in approving or rejecting the application, the sequence of the provisions would suggest that an application might be approved prior to payment of the first premium. We know of no reason why an application may not validly so provide, even if the practice of the insurer is to collect the premium first. If approval of an application were to precede payment, the language in part (b) would have the obvious purpose of delaying attachment of the risk until payment is made under the circumstances specified.

In any event, part (b) refers only to payment of the premium. The conjunctive condition of part (a) remains. No qualifications to the power to approve (and by necessary implication, disapprove) are set forth, and the words "only if and when" emphasize with clarity understandable to the layman the scope of the right set forth. In view of this language, we do not believe that the application is reasonably susceptible of the construction advocated by Pawelczyk. We perceive no ambiguity.

Pawelczyk argues that the Susic affidavit indicates a "practical construction" of the application. It was Susic's view that the policy took effect if and when Pawelczyk "passed" the medical examination. Since we find no ambiguity, there is no occasion to consider this asserted practical construction.

Pawelczyk also contends in this portion of his argument that Allied could not arbitrarily reject the application. Allied contends to the contrary and cites a generally supportive statement in 43 Am.Jur.2d, Insurance § 213 (1969). *See also* 12, J. Appleman, *Insurance Law and Practice* § 7121 (1943). The scope of matters which may be considered in connection with approval having been settled above, the case does not fairly present any issue as to arbitrary rejection, and we decline to discuss it.

Pawelczyk's claim of estoppel is based upon the affidavit of Philip Susic. The essential thrust of the claim is that Susic was clothed with apparent authority to establish a time of inception for the policy to be issued by his principal and that he did so when he told Pawelczyk that the coverage would be in effect when he passed the physical examination. Pawelczyk also cites the " 'reasonable expectations of the ordinary applicant' " which are found controlling in California cases cited and discussed without approval in *John Hancock Mutual Life Insurance Company v. McNeill, supra.* No actual authority of Susic to vary the terms of the application is claimed, and the lack of such authority is established in the record.

Many cases have dealt with similar claims of agency. *Allied* refers to *Sasser v. Coastal States Life Insurance Company*, 113 Ga. App. 17, 147 S.E.2d 5 (1966), and *Roscoe v. Bankers Life, supra.* In *Sasser*, the application contained a provision that any statement made shall not be binding upon the company unless submitted in writing with the application. In *Roscoe*, the application also expressly negated the authority of the agent to modify. The court in *Roscoe* held that the agent's representations there in issue would violate the parol evidence rule.

2. *Reserve Insurance Company v. Staats*, 9 Ariz. App. 410, 453 P.2d 239 (1969).

3. *Republic National Life Insurance Company v. Merkley*, 59 Ariz. 125, 124 P.2d 313 (1942).

The application in this case does not contain the kind of limiting language found in cases such as *Sasser* and *Roscoe*. We nevertheless conclude that the representation in question would clearly vary the terms of the application and the contemplated contract of which it would form a part, and that its admission would be, therefore, in violation of the parol evidence rule. *Roscoe, supra,* 22 Ariz.App. at 287, 526 P.2d at 1085; 9 *G. Couch on Insurance 2d,* § 39:86 (2d ed. 1962).

If we consider the matter purely from the standpoint of apparent authority, we reach the same result. The ultimate source of apparent authority is the principal, not the agent. *Employers' Liability Assurance Corp. v. Glens Falls Insurance Company,* 12 Ariz.App. 362, 364, 470 P.2d 682, 684 (1970). For all that appears in the record here, Susic's primary indicia of authority to act for Allied was his possession of its application, and the application itself stated that the insurance would take effect "only if and when" the application, of which the medical report was a part, was approved at the home office in Iowa. This was a negation of any apparent authority on the part of Susic to provide otherwise. We find the case of *United States Fidelity and Guaranty Company v. Stewart's Downtown Motors,* 336 F.2d 549 (9 Cir. 1964), also cited by Pawelczyk, distinguishable on its facts.

While the phrase " 'reasonable expectations of the ordinary applicant' " is perhaps semantically appealing and may seem at first blush to evoke appropriate considerations, we believe that sound criticism of the concept as applied in California is suggested in *John Hancock Mutual Life Insurance Company v. McNeill, supra.* Even in the California cases, however, we find the following:

"Of course, an insurance company is not precluded from imposing conditions precedent to the effectiveness of insurance coverage despite the advance payment of the first premium. However, as *Ransom* [*Ransom v. Penn Mutual Life Insurance Company,* 43 Cal.2d 420, 274

P.2d 633 (1954)] explains, any such condition must be stated in conspicuous, unambiguous and unequivocal language which an ordinary layman can understand. As the insurer is responsible for drafting the application, it is appropriate that he be required to choose plain and unequivocal terms." *Thompson v. Occidental Life Insurance Company,* 9 Cal.3d 904, 109 Cal. Rptr. 473, 477, 513 P.2d 353, 357 (1973). This we believe the insurer has done in this case, in an application that is relatively free of other provisions and "small print".

We accordingly conclude that no genuine issue of material fact or of law is presented in regard to Pawelczyk's claim of estoppel.

The judgment of the trial court is affirmed.

FROEB, C. J., and HAIRE, P. J., concur.