883 P.2d 435

**SERVICES HOLDING COMPANY, INC., an Arizona corporation, Plaintiff–Appellant,**

v.

**TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, a California corporation; Michael Dale Cherry, Defendants–Appellees.**

**No. 1 CA–CV 91–0425.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 8, 1994.

Review Denied Nov. 1, 1994.

Frederick C. Berry, Jr., P.C. by Frederick C. Berry, Jr., T. Scott King, Phoenix, for plaintiff-appellant.

Bess & Dysart, P.C. by Leon D. Bess, Kevin M. LeWinter, Phoenix, for defendant-appellee Transamerica.

Renaud, Cook, Videan, Geiger & Drury, P.A. by William W. Drury, Jr., Charles A. Struble, Phoenix, for defendant-appellee Cherry.

## OPINION

WEISBERG, Presiding Judge.

Plaintiff Services Holding Company ("SHC") appeals from the granting of summary judgment in favor of defendants Transamerica Occidental Life Insurance Company ("Transamerica") and its employee Michael Dale Cherry ("Cherry"). We hold that SHC raises genuine issues of fact in its breach of contract claim against Transamerica, stem-

ming from both the reasonable expectations doctrine and the waiver doctrine, set out as separate claims. We therefore reverse partial summary judgment on causes of action one, five, and part of six. Furthermore, because we hold that SHC raises genuine issues of fact on its negligence claim against Transamerica, which is not barred by the statute of limitations, we reverse partial summary judgment on the seventh cause of action as to Transamerica. We affirm partial summary judgment as to causes of action two, three, four, and part of six for Transamerica and as to all causes of action for Cherry.

## FACTS AND PROCEDURAL HISTORY

SHC seeks approximately $900,000.00, plus compensatory and punitive damages, under several theories relating to a purported insurance agreement issued by Transamerica with SHC as beneficiary.

In 1987, four key employees of SHC decided to obtain key employee life insurance. The four contacted Cherry, the Phoenix brokerage manager for Transamerica, and asked him to present proposals for key employee insurance in the amount of $1,000,000.00 per each key employee. This case arises out of the application of one of these key employees, Ernest Powell ("Powell").

On July 8, 1987, Powell submitted his application for key employee insurance. The parties disagree on the details of this transaction. Transamerica asserts that, at the time the application was submitted, it issued a conditional receipt indicating that its liability was limited to $100,000.00 until such time as a policy would be issued. SHC denies that Transamerica issued this conditional receipt. It asserts that Cherry made oral representations that coverage in the amount of $1,000,000.00 per person would be effective upon submission of each application, completion of each physical, and payment of each initial premium.

Powell's physical examination revealed abnormalities. Transamerica therefore decided it would not insure Powell under the standard smoker premium, but instead under a "Table J" rate—a more expensive premium.

The time when this decision was made and communicated is also disputed by the parties. Transamerica claims the decision was not made until August 11, 1987; SHC claims that on August 6, 1987, Cherry was informed that Powell would be insured under "Table J" premiums. On August 10, 1987, Powell died.

SHC presented its claim for $1,000,000.00. After investigation, Transamerica paid $100,-000.00, plus interest, pursuant to the conditional receipt. SHC accepted the payment without prejudice to its filing other claims under the alleged policy. On April 18, 1989, SHC filed a complaint seeking the balance of the $1,000,000.00 claim, damages for failure to pay promptly, and punitive damages. On June 27, 1990, SHC filed an amended complaint, which added a seventh cause of action based on negligence. After answering, defendants filed separate motions for partial summary judgment on each cause of action and the trial court held a hearing on the motions. In May 1991, the trial court granted summary judgment in favor of Transamerica and Cherry on all causes of action. SHC timely appealed.

## ISSUES

SHC appeals the granting of summary judgment in favor of Transamerica and Cherry on the following seven causes of action: (1) breach of contract, which was asserted only against Transamerica, (2) bad faith, (3) statutory violations, (4) fraud, (5) reasonable expectations, (6) waiver and estoppel, and (7) negligence. We consider the first, fifth, and sixth causes of action together as they all relate to the underlying contract claim. The other causes of action are considered in turn.

## DISCUSSION

The trial court should grant summary judgment "if the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz.R.Civ.P. 56(c). The Arizona Supreme Court has interpreted this rule to require summary judgment "if the facts produced in support of the claim or defense have so little

probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

### A. Breach of Contract

SHC's first cause of action, the breach of contract claim, was only directed at Transamerica. On appeal, SHC indicates that there are factual issues whether the Transamerica policy was effective at the time of Powell's death, whether the conditional receipt provided $1,000,000.00 coverage, and whether Cherry formed an oral binder that bound Transamerica for $1,000,000.00 coverage. Although, absent other considerations, the express unambiguous provisions of the policy application and the conditional receipt would support the granting of summary judgment for Transamerica, we hold that the doctrine of reasonable expectations requires the trial court to consider Cherry's alleged oral representations, which do raise genuine issues of material fact.

#### 1. Contractual Provisions

##### a. Policy Effectiveness

■ SHC argues that its assertion that the insurance contract was effective constitutes a genuine issue as to a material fact. It asserts that the policy was effective when the underwriting decision was made—when Transamerica placed Powell in the "Table J" category.

The application completed by Powell, however, included provisions requiring full premium payment and policy delivery during the life of the insured. When the key employees submitted their applications for key man insurance, they also submitted the estimated annual premium of $5,520.00 for all four policies, including $1,940.00 for Powell's policy under standard smoker's tables. SHC concedes that, under "Table J," the annual premium for Powell's policy alone would be $6,390.00. Because of these undisputed

facts, the first condition, full premium payment, was not met.

Second, SHC does not indicate any facts showing delivery of the policy to Powell. It relies upon cases holding that a provision requiring "delivery" before death does not mean physical delivery. *See, e.g., Republic Nat'l Life Ins. Co. v. Merkley*, 59 Ariz. 125, 124 P.2d 313 (1942). These cases, however, do not invalidate delivery provisions in general; they simply indicate that delivery can be made constructively. *See id.*, 59 Ariz. at 131, 124 P.2d at 316 (a policy that is deposited in the mail by an insurer, addressed to its agent, for unconditional delivery to the insured, is "delivered to and received by" the insured at that time). Because SHC has not shown any evidence of even constructive delivery, the second condition, delivery during the applicant's lifetime, was not met.

Given these undisputed facts, SHC does not raise any genuine factual issue as to whether the requirements printed in the policy governing the time of policy effectiveness were met. Consequently, if the unambiguous policy terms govern, the policy could not have been effective at the time of Powell's death.

##### b. Conditional Receipt

■ The conditional receipt attached to Powell's application indicated that coverage under the receipt was limited to $100,000.00 for nonstandard classes of risk.[1] SHC did not provide any evidence that Powell was a standard risk and, in fact, the only evidence is that he was a "Table J" risk, far from a standard risk. The unambiguous text of the conditional receipt clearly limits Transamerica's obligation as to Powell to $100,000.00.

##### c. Oral Representations

###### i. Oral Binder

Transamerica argues that any oral representations made by Cherry purporting to

---

1. We note that conditioning a binder upon later underwriting decisions by the insurer may not be effective. *Statewide Ins. Corp. v. Dewar*, 143 Ariz. 553, 556, 694 P.2d 1167, 1170 (1984) (public policy prohibits conditioning binder on later policy issuance). This argument was not raised below or on appeal, however, and we do not consider it now.

bind Transamerica to a contract of temporary insurance could not be effective because oral binders are prohibited by A.R.S. section 20–1120 and the parol evidence rule. Transamerica cites *Continental Life and Accident Co. v. Songer,* 124 Ariz. 294, 603 P.2d 921 (App.1979), as authority for its argument. In *Songer,* this court indicated that A.R.S. section 20–1120 did not apply to life and health insurance and went on to analyze the alleged temporary contract of insurance, without regard to A.R.S. section 20–1120. Because this court found that such representations would violate the parol evidence rule, we did not consider whether the oral representations created an oral contract.

The same situation is before us in the instant case. The oral representations would either vary the terms of the application as to the time of the effectiveness of the policy or would vary the terms of the conditional receipt. The terms of the documents are express and unambiguous. The parol evidence rule, if applied as in *Songer,* would prevent the oral representations from binding Transamerica contrary to the terms of the policy application and the conditional receipt. Notwithstanding, we examine below the continuing validity of the parol evidence rule, as applied in *Songer,* in the face of the more recently clarified doctrine of reasonable expectations.

### ii. Apparent Authority

■ Transamerica also argues that any oral representations made by Cherry purporting to bind Transamerica for $1,000,-000.00 coverage cannot be effective because Cherry lacked authority to bind such coverage. Transamerica correctly notes that the source of the authority, actual or apparent, is the principal. *Reed v. Gershweir,* 160 Ariz. 203, 205, 772 P.2d 26, 28 (App.1989). In the instant case, both the policy application and the conditional receipt expressly restrict the authority of the agent to alter their terms. Transamerica asserts that these unambiguous provisions can negate any claim of apparent authority. *See Pawelczyk v. Allied Life Ins. Co.,* 120 Ariz. 48, 53, 583 P.2d 1368, 1373 (App.1978). Clearly, if the documents in the

instant case are strictly followed, Cherry did not have authority to alter either the application or the conditional receipt.

### d. Preliminary Conclusion

The documents in the instant case are clear and unambiguous. They indicate that the policy was not yet effective, that the conditional receipt limited Transamerica's liability to $100,000.00, and that Cherry did not have authority to alter these terms. If these documents are strictly applied to this transaction and Cherry's oral representations are not considered, summary judgment would be appropriate; without extrinsic evidence, reasonable people could not agree that Transamerica could be liable for more than $100,-000.00.

### 2. Reasonable Expectations

In its fifth cause of action, however, SHC asserts the doctrine of reasonable expectations.[2] If the doctrine of reasonable expectations applies, then extrinsic evidence is admissible, raising a genuine issue of material fact.

The Arizona Supreme Court explained the doctrine of reasonable expectations in *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.,* 140 Ariz. 383, 682 P.2d 388 (1984). The *Darner* court adopted the Restatement (Second) of Contract as a formulation of the doctrine as it relates to standardized contracts:

(1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.

(2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.

(3) Where the other party has reason to believe that the party manifesting such

---

2. The doctrine of purpose is another term for the doctrine of reasonable expectations.

assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

Restatement (Second) of Contracts § 211 (1981) (quoted in *Darner*, 140 Ariz. at 391, 682 P.2d at 396).

■ The supreme court has construed subsection 3 to prohibit courts from enforcing even unambiguous contractual terms in limited circumstances, including "[w]here some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy." *Gordinier v. Aetna Casualty and Surety Co.*, 154 Ariz. 266, 272–73, 742 P.2d 277, 283–84 (1987). The *Darner* court also cited a previous case in which it did not enforce unambiguous terms of a policy because of contrary representations by the insurer as an example that it was not creating new law. 140 Ariz. at 392, 682 P.2d at 397 (citing *Southern Casualty Co. v. Hughes*, 33 Ariz. 206, 263 P. 584 (1928)). This rationale is consistent with the comment to the Restatement, which noted that the condition that triggers subsection 3 may be shown by prior negotiations. Restatement (Second) of Contracts § 211 cmt. f; *see also Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 153, 854 P.2d 1134, 1139 (1993). Thus, evidence of activity reasonably attributable to the insurer, even if contrary to the written contract, is admissible to determine whether the party would have assented if he or she "knew that the writing contained [the contrary provision]." *See* Restatement (Second) of Contracts § 211(3). If the doctrine of reasonable expectations applies to this transaction, the oral representations would be admissible.

We consider, in turn, (1) whether the doctrine of reasonable expectations applies when the insureds are insurance agents, (2) whether the doctrine of reasonable expectations applies to terms governing contract formation, and (3) whether the doctrine of reasonable expectations applies to terms restricting an agent's authority.

### a. Application of *Darner* to Insurance Agents

■ Transamerica argues that the doctrine of reasonable expectations should not apply in this case because the insureds are insurance agents, one of them a licensed life insurance agent. Transamerica asserts that SHC "cannot have had a *reasonable* expectation of $1 million of coverage because its own vast experience in the insurance industry precludes it from reasonably relying on an alleged oral representation of coverage contrary to the conspicuous terms of the written application and conditional receipt." SHC responds that, although the four employees are licensed insurance agents, none of them actively work in the area of life insurance and therefore should not be precluded from presenting evidence of their reasonable expectations.

We are not persuaded by Transamerica's argument. At best, the insureds' previous experience and its effect on their expectations are factual questions. *See Darner*, 140 Ariz. at 400, 682 P.2d at 405 (Cameron, J., specially concurring) ("Whether [the transaction] is a transaction in which the consumer (Darner) was not expected to read the policy (and thus one to which the rule applied by § 211 is applicable) is a question to be decided at trial."); *cf. Taylor*, 175 Ariz. at 151, 854 P.2d at 1137 (applying *Darner* to agreement drafted by attorney). Justice Cameron's concurrence noted that *Darner* "does not confer on 'sophisticated businessmen' any absolute right not to read the policy." *Id.* Nor do we believe that it confers any presumptive expectations on the part of "sophisticated businessmen," even licensed insurance agents. SHC has presented evidence that the insureds were not aware of particularities of life insurance. That assertion leaves the resolution of what the insureds reasonably expected a disputed question for the finder of fact.

### b. Application of *Darner* to Terms Governing Formation

■ Transamerica next argues that *Darner* does not apply to contract formation and, therefore, that the reasonable expectations of the parties cannot affect unambiguous terms

setting forth when the contract is effective. We do not agree. In *Darner*, the court held that even unambiguous terms in a contract should not defeat the reasonable expectations of the parties, particularly if those expectations stem from negotiations including the insurer. *Id.*, 140 Ariz. at 392, 682 P.2d at 397; *see also Gordinier*, 154 Ariz. at 272–73, 742 P.2d at 283–84; *Taylor* 175 Ariz. at 153, 854 P.2d at 1139 (court must give effect to the intention of the parties at the time the contract was made). Making distinctions between interpreting contract terms and contract formation would eviscerate this holding. Insurance companies could draft contracts that included unexpected provisions governing contract formation or partial contract formation within the contract. Such a result would be exactly what *Darner* sought to avoid: insureds would be denied coverage contrary to their reasonable expectations due to unexpected provisions in the standardized agreement. We hold, therefore, that the reasonable expectations doctrine does apply to provisions of contracts governing contract formation.

c. Application of *Darner* to Terms Governing Agent's Authority

■ Transamerica also argues that Cherry's oral representations cannot bind Transamerica because the application and conditional receipt unambiguously provide that the agent does not have the authority to alter either document. As noted above, even unambiguous contractual terms will not defeat the parties' reasonable expectations. This rule must also apply to the analysis of an agent's authority. Otherwise, an insurer could craft carefully worded standardized contracts that would exclude authority for certain coverage, even though such coverage would be within the reasonable expectations of the parties. We do not believe that an insurer should be able to circumvent *Darner* in such a manner.

d. Reasonable Expectations Doctrine Does Apply

■ Because an overriding policy behind the doctrine of reasonable expectations is that unambiguous contract provisions found in standardized contracts will not defeat the reasonable expectations of the parties, we hold that the doctrine of reasonable expectations does apply to the instant case. We next consider the doctrine of reasonable expectations under the summary judgment standard.

3. Application of Doctrine of Reasonable Expectations

For the purposes of this analysis, we assume, arguendo, that Cherry made the representations that SHC alleges: that each key employee would be covered for $1,000,000.00 immediately upon submission of the application, completion of a physical exam, and payment of the first premium.

a. Contract Formation

■ Cherry's alleged representations did not specify whether immediate coverage would stem from the application or the conditional receipt. SHC could therefore have reasonably expected that the $1,000,000.00 policy itself became immediately effective upon fulfillment of the conditions contained in Cherry's representations. Because Cherry's oral representations could be admitted as evidence of the policy's effectiveness, notwithstanding the unambiguous terms of the application, we hold that SHC has raised a genuine factual issue. Reasonable people might agree that Cherry's representations induced SHC's reasonable expectation that the policy was immediately effective.

b. Conditional Receipt

■ Similarly, Cherry's oral representations could have affected the insureds' expectations as to the amount of insurance provided by the conditional receipt. Persons could agree that the insureds reasonably expected to be covered under the temporary contract for $1,000,000.00. Because Cherry's oral representations possibly alter the amount of coverage under the conditional receipt, we hold that SHC has raised a genuine factual issue. Reasonable people might agree that Cherry's representations induced SHC's reasonable expectation that the written conditional receipt provided coverage of $1,000,000.00.

### c. Oral Representations

#### i. Oral Binder

The *Darner* court expressly indicated that oral representations can be relevant when deciding whether there is coverage, even in the face of contrary unambiguous contractual terms. 140 Ariz. at 392, 682 P.2d at 397. Such a result runs counter to the *Songer* court's ruling that parol evidence of this type is not admissible to contradict unambiguous contractual terms. Because we hold that, under *Darner* and *Gordinier*, Cherry's oral representations are admissible, *Songer* does not apply.

■■■ Furthermore, we reject Transamerica's argument that oral binders of life insurance are prohibited by A.R.S. section 20–1120. Binders are no different than other insurance contracts. "The same fundamental law of contracts applies to both binders and insurance policies." *Dewar*, 143 Ariz. at 558 n. 4, 694 P.2d at 1172 n. 4. Generally, oral insurance contracts are valid. *Gulf Ins. Co. v. Grisham*, 126 Ariz. 123, 125, 613 P.2d 283, 285 (1980). Logically, then, oral insurance binders should also be valid. Section 20–1120 does not provide the authority for these binders, *see Cain v. Aetna Life Ins. Co.*, 135 Ariz. 189, 192 n. 2, 659 P.2d 1334, 1337 n. 2 (App.1983) ("A contract for temporary insurance can arise ... independent of the statute."), but simply operates to regulate most insurance binders. The *Songer* court recognized this fact since it went on to analyze the alleged temporary contract of insurance, exclusive of A.R.S. section 20–1120. 124 Ariz. at 299, 603 P.2d at 926. Subsection D only exempts life and disability binders from section 20–1120's regulation; it does not independently prohibit oral binders of life and disability insurance.

■■■ Because we hold that section 20–1120 does not prohibit oral binders of life insurance and because we hold that, under *Darner*, Cherry's oral representations are admissible, we conclude that SHC has raised a genuine factual issue. Reasonable people might agree that Cherry's representations created an effective oral binder for temporary coverage of $1,000,000.00.

#### ii. Apparent Authority

■■■ Since we hold that *Darner* allows admission of evidence outside the standardized contract, we also hold that the issue of whether Cherry had apparent authority to bind Transamerica is a factual question. The standardized contract, by itself, cannot limit SHC from offering evidence to refute the limitation on the agent's authority. Whether Cherry had apparent authority to bind Transamerica is a factual question about which SHC has raised a genuine issue.

### 4. Waiver and Estoppel

Although SHC asserts the doctrines of waiver and estoppel against both defendants, the breach of contract claim was only asserted against Transamerica. As SHC concedes that its waiver and estoppel claims stem from its contractual claim, such claims, therefore, are effectively asserted only against Transamerica.

In its sixth cause of action, SHC argues that by accomplishing all material steps to underwrite the policy on Powell, Transamerica has waived or is estopped from asserting technical defenses to coverage. It specifically alleges that Transamerica's conduct of retaining the unearned portion of the premium, over and above the premium that would be due based on Transamerica's position that the conditional receipt was for $100,000.00 only, constituted evidence of this waiver and estoppel.

"Waiver is defined as a voluntary and intentional relinquishment of a known right, whereas 'estoppel' means that a party is precluded by his own acts from asserting a right to the detriment of another who, entitled to rely on such conduct, has acted thereon." *Waugh v. Lennard*, 69 Ariz. 214, 223, 211 P.2d 806, 812 (1949) (citations omitted).

■■■ Waiver of a right requires a clear showing of an intent to waive that right. *Societe Jean Nicolas Et Fils v. Mousseux*, 123 Ariz. 59, 61, 597 P.2d 541, 543 (1979). Intent to waive, however, may be inferred from conduct, *see American Continental Life Ins. Co. v. Ranier Constr. Co., Inc.*, 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980), and the conduct alleged is particularly relevant to

such a claim, *see McCollum v. Continental Casualty Co.*, 151 Ariz. 492, 495, 728 P.2d 1242, 1245 (App.1986) (insurer cannot treat policy as void and retain premiums). Furthermore, SHC correctly asserts that a defendant cannot "cure" a waiver by returning the premium at some later date. 28 Am. Jur.2d, *Estoppel and Waiver* § 156 at 838 (1966). Because SHC asserted a sufficient genuine factual issue, summary judgment was inappropriate on the waiver claim.

■ On the other hand, a party asserting an estoppel claim must show that it, "having the right to do so under all the circumstances of the case, has, in good faith, relied thereon." *Waugh*, 69 Ariz. at 223, 211 P.2d at 812; *see also Darner*, 140 Ariz. at 394, 682 P.2d at 399. SHC has entirely failed to show any detrimental reliance upon Transamerica's completion of the underwriting process or wrongful retention of unearned premium. Summary judgment is appropriate on the estoppel claim.[3]

## 5. Conclusion on Contract Claims

Because we hold that Cherry's oral representations are admissible pursuant to *Darner*, we conclude that SHC has raised several disputed factual issues on the breach of contract issue: (1) whether the policy was effective at the time of Powell's death, (2) whether the conditional receipt provided $1,000,000.00 coverage, and (3) whether Transamerica is bound by a $1,000,000.00 oral binder. We therefore reverse the granting of summary judgment on SHC's causes of action one and five against Transamerica. Because the reasonable expectations doctrine is derivative from the contract action, which was only pled against Transamerica, we affirm partial summary judgment in favor of Cherry on cause of action five.

We further hold that SHC put forward sufficient genuine issues of fact to avoid summary judgment on its waiver claim, but failed to assert necessary elements to establish its estoppel claim. Therefore, we reverse summary judgment in favor of Transamerica on

cause of action six as to the waiver claim, while we affirm as to the estoppel claim. For the same reasons, and because the waiver and estoppel claims are derivative from the contract action, which was only pled against Transamerica, we also affirm partial summary judgment in favor of Cherry on cause of action six.

### B. Bad Faith Claims

In its second cause of action, SHC alleges bad faith against both Transamerica and Cherry. SHC lists several instances of conduct on the part of Transamerica and Cherry that it claims raise a genuine issue of material fact related to this claim.

■ To establish a bad faith claim, a plaintiff must show the following: (1) that the insurer acted unreasonably toward the insured *and* (2) that the insurer acted knowingly or with reckless disregard as to the reasonableness of its actions. *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 260, 792 P.2d 719, 723 (1990). Although the intent requirement of the second element can be established by conduct, *see Ranburger v. Southern Pac. Transp. Co.*, 157 Ariz. 551, 553, 760 P.2d 551, 553 (1988) ("evil mind" needed to establish punitive damages can be inferred from defendant's acts), in the instant case, the acts alleged against defendants do not facially establish any knowing or reckless disregard and SHC does not provide any theory as to how they should establish such disregard. On their face, the acts alleged against defendant are either within reasonable business practices or, at most, are evidence of negligence on the part of the insurer. Because SHC fails to provide evidence of Transamerica's knowing or reckless disregard for the reasonableness of its actions, we affirm partial summary judgment on cause of action two in favor of Transamerica and Cherry.[4]

### C. Statutory Violations

■ In its third cause of action, SHC asserted several statutory violations against

---

3. This holding does not affect the oral representations made by Cherry considered previously. This holding only goes to the estoppel claim asserted in SHC's sixth cause of action.

4. Because of our disposition on this cause of action, we do not address the punitive damages or third-party bad faith claims.

Transamerica and Cherry. In response to the motion for partial summary judgment, however, SHC agreed that this claim was barred by the statute of limitations. "On appeal from a summary judgment, parties are not allowed to advance new theories or raise new issues in order to secure a reversal." *Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.*, 153 Ariz. 279, 282, 736 P.2d 13, 16 (1987). Nor should SHC be able to raise an issue it affirmatively abandoned. *Stuart v. Insurance Co. of N. Am.*, 152 Ariz. 78, 84, 730 P.2d 255, 261 (App.1986). We affirm partial summary judgment on cause of action three in favor of both Transamerica and Cherry.

### D. Fraud

■ SHC's fourth cause of action was for fraud.[5] Circumstances that constitute fraud must be pled with particularity. Ariz. R.Civ.P. 9(b). SHC only pleads one such circumstance: that Cherry made oral representations that Transamerica was bound for $1,000,000.00 when, in fact, the conditional receipt limited liability to $100,000.00.

To establish a fraud claim, the plaintiff must show the following: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Davis v. First Nat'l Bank*, 124 Ariz. 458, 465, 605 P.2d 37, 44 (App.1979) (citing *Moore v. Meyers*, 31 Ariz. 347, 354, 253 P. 626, 628 (1927)). SHC entirely fails to cite any evidence in the record that raises a genuine factual issue on these elements. We therefore affirm partial summary judgment on cause of action four in favor of both Transamerica and Cherry.

### E. Negligence

#### 1. Relation Back Doctrine—In General

■ Defendants argue that SHC's seventh cause of action, for negligence, is barred by the statute of limitations. SHC responds that the cause of action, added in its amended complaint, should relate back to the time of the filing of the original complaint and therefore is not barred.

Rule 15(c) sets forth guidelines for deciding whether amendments relate back: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Defendants correctly note that the seventh cause of action is based on a factual premise that differs from the original complaint. In the original complaint, SHC alleged that a conditional receipt was issued; in the amended complaint, SHC alleged that no such receipt was issued. Defendants argue that this change in factual allegations makes the relation back doctrine inapplicable. *See Marshall v. Superior Ct.*, 131 Ariz. 379, 383, 641 P.2d 867, 871 (1982) (change in legal theory does not prevent relation back if factual situation remains the same).

■ We believe that defendants attach undue emphasis to this alteration; the analysis should center on whether "the adverse party, viewed as a reasonably prudent man, ... should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question." *Id.* (citing 6A, Charles A. Wright et al., Federal Practice and Procedure § 1497, at 93 (2d ed. 1990)). The focus, then, is whether defendants were given sufficient notice of the scope of the facts that might be called into question. A party may allege new facts in an amended complaint so long as they relate to the same transaction.

Clearly, the original complaint involved all aspects of the application and issuance of insurance. Because defendants were given sufficient notice of the transaction in question, we conclude that the amended complaint alleges facts stemming from that same

---

**5.** SHC also includes allegations for negligent misrepresentation. These claims are dealt with in the section concerning SHC's seventh cause of action for negligence.

transaction and therefore relates back to the time of the original filing. The seventh cause of action, at least against Transamerica, is not barred by the statute of limitations.

### 2. Party Relation Back Doctrine

■ Defendant Cherry was not formally named in this action until the filing of the amended complaint. He argues that this amendment is barred by the statute of limitations. The second sentence of Rule 15(c) provides that a party amendment will relate back to the original filing if the new party "has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits" and "knew or should have known that, but for a mistake concerning the identity of the party, the action would have been brought against the party." Cherry does not dispute that he had sufficient notice to satisfy the first element of this test. He instead argues that SHC did not *mistake* Cherry's identity, but simply failed to add Cherry and therefore the amendment cannot satisfy the second element.

■ We agree. The second element requires that defendant had not been named due to a mistake. *Bisaillon v. Casares,* 165 Ariz. 359, 361–62, 798 P.2d 1368, 1370–71 (App.1990). Defendants added because of a new legal theory are not left out due to mistake, *Canteen Corp. v. Superior Ct.,* 158 Ariz. 461, 462–63, 763 P.2d 525, 526–27 (App. 1988), neither are those added to replace fictitious defendants, *Keller v. United States,* 667 F.Supp. 1351, 1357–58 (S.D.Cal.1987). "[Party relation back] will be refused only if the court finds that there is no reason why the party to be added should have understood that he was not named due to a mistake." Wright et al., *supra,* § 1498 at 139. In the instant case, Cherry had no reason to understand that he was not named due to a mistake. We hold that the amended complaint does not relate back as to Cherry and therefore the negligence claim against Cherry is barred by the statute of limitations.

### 3. Substance of Claim

■ Defendants contend that SHC fails to raise a genuine issue of material fact on the negligence issue. The allegations against Transamerica and Cherry are as follows: (1) failing to issue and deliver the conditional receipt, (2) failing to disclose the terms and conditions of the conditional receipt, (3) telling SHC that Powell was covered for $1,000,-000.00 when the policy and receipt purported to limit the death benefit, and (4) failing to promptly notify SHC that the premium on Powell's policy would be rated on "Table J." These allegations are supported by evidence on the record. Reasonable people could agree with SHC's allegations. *See Orme Sch.,* 166 Ariz. at 309, 802 P.2d at 1008. We hold that these allegations do raise a genuine issue of fact and therefore summary judgment was inappropriate on this claim against Transamerica.

### CONCLUSION

We reverse partial summary judgment on causes of action one, five, and seven and reverse in part and affirm in part summary judgment on cause of action six as to Transamerica. We affirm partial summary judgment on all other causes of action in favor of Transamerica. We affirm partial summary judgment on all causes of action in favor of Cherry.

GARBARINO and CLABORNE, JJ., concur.